IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION
CASE NUMBER: 2:16-cv-03174-DCN

Shawn Moultrie,

                                    Plaintiff,

v.

Progressive Direct Insurance Company,

                                    Defendant.

AFFIDAVIT OF
WENDY GARCIA

PERSONALLY APPEARED BEFORE ME, the undersigned, Wendy Garcia, who, after being duly sworn, deposes and says:

1.    My name is Wendy Garcia.

2.    I am above 18 years of age.

3.    I make this affidavit based on my knowledge and observations.

4.    I am the Manager of Business Process for the Progressive Group of Insurance Companies, of which Progressive Direct Insurance Company (hereinafter "Progressive") is a member company.

5.    I am familiar with the procedures for the purchase of insurance policies directly through our website, www.progressive.com[1], including specifically, Progressive policy number 12463521-0 purchased by Shawn Moultrie on November 21, 2015, which is attached hereto as Exhibit 1.

---

[1] When a customer purchases their policy directly through the website or over the telephone, without a local agent, we refer to that "channel" through which the customer is doing business with us as the Direct Channel. When a customer purchases their policy from a local agent, they are doing business with us through our Agency Channel. Here, the Plaintiff choose to do business with us through our Direct Channel.

PLAINTIFF'S EXHIBIT 4

6.    Progressive utilizes a customer experience management system for purchases of insurance made through the internet. This system is provided by Tealeaf Technology, Inc., an industry leader that provides a recording of screens displayed by Progressive during a session while the applicant is quoting or purchasing a policy of insurance on Progressive's website.[2] It shows the screens with which Moultrie interacted, the items he clicked, and other pages he viewed during his session. The Tealeaf recorded screenshots are attached hereto as Exhibit 2.

7.    In addition to the Tealeaf recording, Progressive archives electronically signed documents in an on-premises data repository. Together, the Tealeaf session and archived electronically-signed records give an accurate copy of the transaction that took place on November 21, 2015, when Moultrie applied for and purchased his policy.

8.    As part of the policy purchasing process, a customer seeking to buy a Progressive policy is required to provide information needed for issuance of the policy, including the selection of liability coverage limits and whether the customer wishes to elect or reject certain optional coverages, or select from available limits of optional coverage.

9.    For Progressive policies purchased online via the internet at www.progressive.com, and for which customers in South Carolina are eligible to electronically sign their policy forms, the customer is directed during the online application process to provide responsive information used to pre-populate policy forms. As the process is performed online through a connection to Progressive's aforementioned website, all of the customer's signatures obtained on required and other forms during the online session are electronic signatures obtained through the customer's use of their computer facilities, i.e., keyboard, mouse, etc.

---

[2] The recording shows the screens sent to Moultrie's computer/electronic device in a step-by-step manner. It provides an interactive screen shot of every individual page that Moultrie went through during the online transaction.

10.    During the online session on November 21, 2015, Moultrie was presented with an electronic version of each policy signature form relevant to the transaction, including the "Offer of Additional Uninsured Motorist Coverage and Optional Underinsured Motorist Coverage" form (hereinafter "Offer Form").

11.    The Offer Form matches the "Offer of Additional Uninsured Motorist Coverage and Optional Underinsured Motorist Coverage" then approved by the South Carolina Department of Insurance for use by Progressive to obtain the selection or rejection of UIM coverage as of November 21, 2015, when Moultrie purchased the policy. The Offer Form was presented to the applicant in .pdf format within an Adobe Acrobat Reader frame on the web page and could be read in its entirety by Moultrie. In fact, Moultrie was able to (1) view the document full screen, exactly as it appears when printed on paper and scroll through it, reading it at his own discretion and pace; (2) print the document and read it at his own discretion and pace; and/or (3) save the .pdf form to his computer for viewing, printing, and/or reading later at his own discretion and pace.

12.    The web page in which the Offer Form appeared contained the instruction "Please read and sign below by entering your name in the boxes provided." It asked him to "Please Sign" the forms by typing his first and last name exactly as they appeared below the signature boxes. The policy could not be issued until Moultrie placed his electronic signature on the Offer Form.

13.    Because the electronic version of the Offer Form within the Adobe frame is unalterable, Moultrie's typed name and the typed date already appeared in the signature line of each form to be signed.[3] For our electronic forms, a signature block is presented below the frame on each web

---

[3] Even though the customer's name is pre-populated onto the signature line of the .pdf form, if the customer does not agree to and then sign the form electronically, the policy is not issued and the form is not saved.

page containing a signature box to accommodate the customer's electronic signature. The wording adjacent to the signature block states as follows:

> I represent that I am the person whose name appears on the signature line of the document presented above, that I viewed the document at the recommended browser resolution and Adobe view size. I acknowledge and agree to the statements, terms and conditions in the document above and that by typing my name below and clicking "Continue," I am electronically signing the document, which will have the same legal effect as the execution of the document by a written signature and shall be valid evidence of my intent and agreement to be bound. I understand that if I do not electronically sign each document presented during the online session, the application will not be effective and no insurance coverage will result.

14.     To electronically sign the document, the customer types his/her name in data entry boxes within the signature block, which must match the name of the primary named insured on the policy. The customer then clicks a "Continue" button to complete the signature process for the form. The customer is informed that by typing his name and clicking the button, he is agreeing to the terms of the form and demonstrating his explicit intent to be legally bound thereby.

15.     Exclusively and directly as a result of the manual entry of the name of "Shawn F. Moultrie" into the signature data entry fields, Moultrie electronically signed the Offer Form and his electronic signature was logically associated with the Offer Form. The archived pages of the .pdf version of the Offer Form containing Shawn Moultrie's electronic signature, which were produced and archived as a result of his correct completion of this process, are attached hereto as Exhibit 3.

16.     The identical procedure was used by Moultrie for signing the Application and the Electronic Fund Transfer Authorization (hereinafter "EFT Authorization") documents with the identical "Please read and sign below" instruction and signature block informational section. The archived pages of the .pdf version of the Application are attached hereto as Exhibit 4. The archived page of the .pdf version of the EFT Authorization is also attached as Exhibit 5.

17.    The procedures described by this affidavit pursuant to which the electronic application for coverage was completed and signed by Moultrie on November 21, 2015, were consistently and routinely utilized for each and every policy sold directly in South Carolina by Progressive for which an electronic signature was obtained for an internet-based electronic policy application during 2015. This process represented Progressive's established routine pattern and practice for presenting and having executed the requisite UIM selection-rejection form during the year 2015, including November 21, 2015.

18.    The procedures described by this affidavit pursuant to which the electronic application for coverage was completed and signed by Shawn Moultrie on November 21, 2015 were specifically designed for and utilized by Progressive for the purpose of complying with the Electronic Signatures in Global and National Commerce Act, 15 U.S.C. §§ 7001, et. seq. and the Uniform Electronic Transactions Act, S.C. Code §§ 26-6-10, et. seq.

19.    The documents attached as Exhibits 1 through 5 were prepared at or near the times of the transactions and matters described and depicted therein, and they are kept in the normal course of business at Progressive; and it is the regular practice of Progressive to generate records such as and including those attached hereto as Exhibits 1 through 5.

FURTHER AFFIANT SAYETH NOT

_Wendy Garcia_
Wendy Garcia

SWORN to and subscribed before me
This _11_ day of _April_____, 2017
_J. Bobbi Brown_____ (L.S.)
Notary Public for _Cuyahoga County, Oh_
My Commission Expires: _7 Dec. 2020_

Page 5 of 5