**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| SHAWN MOULTRIE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 2:16-cv-03174-DCN |
| vs. | ) | |
| | ) | **ORDER** |
| PROGRESSIVE DIRECT INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court on cross-motions for summary judgment filed by

defendant Progressive Direct Insurance Company ("Progressive") and plaintiff Shawn

Moultrie ("Moultrie"). For the reasons set forth below, the court denies both motions.

## I.  BACKGROUND

This declaratory judgment action is before the court to clarify the rights under the

underinsured motorist coverage ("UIM") provision of an automobile insurance policy

("the Policy") that Progressive issued to Moultrie for his 2012 Harley Davidson

motorcycle. Moultrie purchased the Policy online through the Progressive website at

Capital City Bikes in Columbia, South Carolina on November 21, 2015. This online

purchase occurred because Moultrie had to show proof of insurance before he could lease

or buy the 2012 Harley Davidson motorcycle. During the online purchase of the Policy,

Capital City Bikes employee Gayle Case ("Case") assisted Moultrie in purchasing the

Policy.

On November 27, 2015, Moultrie, who was riding the 2012 Harley Davidson

motorcycle at the time, was seriously injured in a motor vehicle collision in Moncks

Corner, South Carolina by an unknown driver.  The Policy provided liability coverage of up to $100,000 per person and $300,000 per accident, but did not provide UIM coverage. Moultrie alleges that Progressive did not make a meaningful offer of UIM coverage as required under S.C. Code Ann. § 38-77-350 and other court decisions on this issue.  He now asks the court to reform the Policy to include $100,000 in UIM coverage for the 2012 Harley Davidson motorcycle.

Progressive filed its motion for summary judgment on April 12, 2017, to which Moultrie responded on April 25, 2017.  Progressive replied on May 2, 2017.  Moultrie filed its motion for summary judgment on April 13, 2017, to which Progressive responded on April 27, 2017.  Moultrie filed a reply on May 3, 2017, and Progressive filed a sur-reply on May 15, 2017.  These motions have been fully briefed and are now ripe for the court's review.

## II.  STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Rule 56(c) of the Federal Rules of Civil Procedure requires that the district court enter judgment against a party who, 'after adequate time for discovery . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Stone v. Liberty Mut. Ins. Co., 105 F.3d 188, 190 (4th Cir. 1997) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).  Any reasonable inferences are to be drawn in favor of the nonmoving party.  See Webster v. U.S. Dep't of Agric., 685 F.3d 411, 421 (4th Cir. 2012).  However, to defeat summary judgment, the nonmoving party must identify

an error of law or a genuine issue of disputed material fact.  See Fed. R. Civ. P. 56(a);

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); see also Bouchat v. Balt.

Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003).

Although the court must draw all justifiable inferences in favor of the nonmoving

party, the nonmoving party must rely on more than conclusory allegations, mere

speculation, the building of one inference upon another, or the mere existence of a

scintilla of evidence.  See Anderson , 477 U.S. at 252; Stone, 105 F.3d at 191.  Rather, "a

party opposing a properly supported motion for summary judgment . . . must 'set forth

specific facts showing that there is a genuine issue for trial.'"  Bouchat, 346 F.3d at 522

(quoting Fed. R. Civ. P. 56(e) (2002) (amended 2010)).  If the adverse party fails to

provide evidence establishing that the factfinder could reasonably decide in his favor,

then summary judgment shall be entered "regardless of '[a]ny proof or evidentiary

requirements imposed by the substantive law.'"  Id. (quoting Anderson, 477 U.S. at 248).

### III.   DISCUSSION

Both summary judgment motions turn on the same issue—whether Progressive

made a meaningful offer of the optional UIM coverage to Moultrie such that the court is

precluded from reforming the Policy.  In South Carolina, there are two ways for an

insurer to make a meaningful offer: (1) the § 38-77-350(B) statutory presumption and (2)

the Wannamaker test.  Liberty Mut. Fire Ins. Co. v. McKnight, 125 F. Supp. 3d 602, 611

(D.S.C. 2015).  As the court explains below, there is a genuine issue of material fact

whether the UIM provision was signed.  Therefore, there is no statutory presumption of a

meaningful offer under § 38-77-350(B) as interpreted by the Supreme Court of South

Carolina in Traynum v. Scavens, 786 S.E.2d 115 (S.C. 2016).  An insurer can still prove

that it made a meaningful offer under the test outlined in <u>State Farm Mutual Automobile Insurance Co. v. Wannamaker</u>, 354 S.E.2d 555 (S.C. 1987), but the parties have not briefed this issue sufficiently for the court to determine whether there has been a meaningful offer under this test. Accordingly, the court denies both summary judgment motions.

### A. Statutory Presumption of Meaningful Offer under S.C. Code § 38-77-350(B) and <u>Traynum v. Scavens</u>

The issue before the court is narrow—whether there is a genuine issue of material fact if Moultrie electronically signed the UIM form for the Policy. As the court explains below, it finds that there is.

As an initial matter, the parties dispute the admissibility of the computer code and the screenshots from Progressive's internal document retention system. Moultrie contends that in its Requests for Production, it specifically asked for "data," "electronic files," "recordings," "screenshots" and "electronic files" relating to the Policy and meaningful offer of UIM coverage. ECF No. 22 at 3. According to Moultrie, Progressive objected to these requests for production as "not relevant and not reasonably calculated to lead to the discovery of admissible evidence." Now that Progressive is relying on these same, previously "not relevant" screenshots and metadata, and indeed has attached these documents as exhibits to its motion for summary judgment as well as its response to Moultrie's Motion for Summary Judgment, Moultrie contends that the court should not consider these documents as part of the record for summary judgment purposes. The primary purpose of the discovery rules in the Federal Rules of Civil Procedure is to avoid just this type of litigation by surprise. <u>See</u> <u>Tyson v. Trigg</u>, 50 F.3d 436, 445 (7th Cir. 1995) (noting that the "central aim" of "rules regulating discovery" is

to "minimize surprise at trial"). Rule 37 sets out that the default sanction for a violation of Rule 26's disclosure requirements is barring the use of the undisclosed evidence going forward. See Fed. R. Civ. P. 37(c)(1). There is an exception where the failure to disclose was "substantially justified or is harmless." Id. The court agrees that Moultrie suffered surprise and prejudice by Progressive's use of this evidence that was not turned over during the discovery process yet used at the summary judgment stage. Progressive's refusal to disclose documents that it now uses to support its summary judgment argument is neither harmless nor substantially justified. Since the screenshots of Moultrie's electronic signature in Progressive's internal document retention system, the computer code that is cited in Garcia's affidavit, and the screenshots from the Tealeaf system were not disclosed to Moultrie during discovery, the court will not consider them.

Moultrie argues that he never electronically signed the UIM coverage provision, and that the signature was instead prepopulated onto the coverage provisions through Progressive's own website. ECF No. 16 at 4. In support of this argument, Moultrie offers screenshots taken from the Tealeaf Technology system of the UIM provision, where the three box fields where an applicant can click and type in his name to provide assent to the optional UIM coverage is blank. This lack of screenshots, as well as the lack of Moultrie's electronic signature for underinsured motorist coverage, Moultrie argues, is conclusive that he, as the named insured, never gave the required signature.

Under S.C. Code Ann. § 38-77-350(B):

If this form is signed by the named insured, after it has been completed by an insurance producer or a representative of the insurer, it is conclusively presumed that there was an informed, knowing selection of coverage and neither the insurance company nor an insurance agent is liable to the named insured or another insured under the policy for the insured's failure to purchase optional coverage or higher limits.

If Moultrie did indeed provide an electronic signature on the UIM form, the South Carolina Supreme Court has held that an electronic signature rejecting optional underinsured motorist coverage binds the insured, and triggers the statutory conclusive presumption of a meaningful offer.[1] Traynum v. Scavens, 786 S.E.2d 115 (S.C. 2016). Moultrie contends that a prepopulated signature on a coverage form does not fulfill the statutory mandates of § 38-77-350. Progressive rebuts that under Traynum, Progressive's practice of prepopulating portions of the UIM form has been upheld as compatible with § 38-77-350(b), and the simple fact that the UIM form was prepopulated does not in and of itself mean that there was no meaningful offer. However, while the Traynum court certainly states that an electronic signature is "as effective as" a handwritten signature for triggering the statutory presumption of § 38-77-350, it does not address whether a prepopulated form without the named insured's electronic signature triggers that same statutory presumption. Indeed, the word "prepopulated" is nowhere to be found in Traynum.

To the extent that Progressive is attempting to argue that a prepopulated signature that appears on an insurance policy before the insured reads through and signals affirmative ascent to the terms of the policy fulfills § 38-77-350, the court is disinclined

---

[1] Since he did not personally mark, select, or sign the form, Moultrie argues that under § 38-77-350(B) he did not knowingly waive the selection of UIM coverage. ECF No. 16 at 4. After the South Carolina Supreme Court's decision in Traynum, this is no longer an accurate restatement of the law. In Traynum, the South Carolina Supreme Court held that an electronic signature rejecting optional UIM coverage during an online purchase of insurance policy binds the named insured and triggers the statutory conclusive presumption of a meaningful offer. It is no longer necessary for the named insured to personally mark the form for the insurer to be entitled to a conclusive meaningful offer presumption under South Carolina Code § 38-77-350(B).

to agree with Progressive. It is important to keep in mind that "the requirement of a meaningful offer of additional . . . UIM coverage is intended to protect an insured. A meaningful offer of additional . . . UIM [coverage] makes as certain as possible that an insured has actual knowledge of his options with respect to such coverages and is therefore able to make an informed decision with respect to his desired coverage." Grinnell Corp. v. Wood, 698 S.E.2d 796, 800 (S.C. 2010) (citing Floyd v. Nationwide Mut. Ins. Co., S.E.2d 6, 12 (S.C. 2005) (emphasis added)). Consequently, "[a]ll law with respect to a meaningful offer of additional . . . UIM coverage must be applied so as to effectuate this stated purpose." Id. at 799; Carter v. Standard Fire Ins. Co., 753 S.E.2d 515, 518 (S.C. 2013) (" '[T]he UIM and [uninsured motorist] statutes are remedial in nature and enacted for the benefit of injured persons' and 'should be construed liberally to effect the purpose intended by the Legislature.'" (quoting Floyd, 626 S.E.2d at 10)). The Supreme Court of South Carolina held in Grinnell Corp. v. Wood that the requirement of a meaningful offer is intended to protect an insured, thus the court disagrees with Progressive that a website prepopulating an electronic signature on an insurance policy constitutes a meaningful offer.

Progressive contends that this case is "exactly" like Traynum. However, the parties in Traynum did not dispute whether the plaintiff had provided an electronic signature on the UIM form. Indeed, in Traynum, Progressive provided screenshot images of every page that the plaintiff saw in choosing her policy coverage, and the court cited to the screenshot of the UIM form with plaintiff's electronic signature to confirm that she was rejecting UIM coverage. Here, there is vigorous debate between the parties whether Moultrie provided an electronic signature on the form and dueling screenshot images of

the UIM form—Moultrie has provided a screenshot through the Tealeaf system that does not show Moultrie's signature on the UIM form whereas Progressive has provided computer code record from Moultrie's transaction that ostensibly shows that Moultrie's full name was typed into the signature box under the UIM offer form.

In support of its argument that Moultrie had electronically signed the UIM form, Progressive cites to two primary pieces of evidence: (1) the UIM offer form in Progressive's internal document retention system, which shows an electronic signature on the UIM form, and (2) Wendy Garcia's affidavit, which includes a portion of the computer code[2] from Progressive's document retention system showing an electronic signature on the UIM form. As explained above, because Progressive did not disclose these documents during discovery the court refuses to consider them now. In support of Moultrie's position, there is deposition testimony in which Moultrie testifies that he at no point filled out a portion of the UIM form on the Progressive website, and neither did he type his name into the "electronic signature" box on the UIM page. Instead, Moultrie testifies that the only time that he signed his name on the form was for his debit card, to purchase the Policy. ECF No. 16, Ex. 2, Moultrie Deposition 66:6–25. Case, who was employed by Capital City Cycles as the Parts Manager, assisted Moultrie "with the entry of certain information" on the Progressive website, but specifically states that she did not "electronically sign any documents on behalf of [Moultrie]." ECF No. 16, Ex. 1, Gayle

---

[2] The court confesses that it is not able to determine from the portion of code whether there truly is an electronic signature on the UIM coverage form. However, Progressive claims that the computer code is determinative on the presence of Moultrie's electronic signature on the UIM form. Under the summary judgment standard, in considering Moultrie's motion for summary judgment the court is to consider any ambiguities of fact resolved in Progressive's favor as the non-moving party.

Case Affidavit ¶ 8. Moultrie also attaches screenshots of the UIM coverage form from the Tealeaf system, showing no signature on the box field where an insured must type his name. ECF No. 16 at 4. To explain why the screenshots of the UIM form from the Tealeaf system do not contain Moultrie's electronic signature, Progressive contends that the Tealeaf system is used for training and retention purposes only and is not used as a records archive. ECF No. 20 at 4. This is the sort of factual dispute that cannot be resolved at the summary judgment stage.

A review of the record reveals that there is a dispute of material fact if Moultrie ever provided an electronic signature on the UIM coverage form. In support of Moultrie's position that he did not sign the form is his deposition testimony, Case's affidavit, and the Tealeaf screenshot of the UIM coverage provision page that does not have Moultrie's electronic signature on it. On the other hand, Progressive contends that the Tealeaf system is not used as a records archive. Given this factual dispute between the parties and that the parties have filed cross-motions for summary judgment on the issue of whether Moultrie provided an electronic signature on the UIM page such that the Traynum rule is triggered, the court cannot grant either party's summary judgment motion on the issue of whether there is a statutory presumption of coverage.[3]

---

[3] Since there is a material dispute over whether Moultrie electronically signed the UIM form, this is sufficient for the court to deny both parties' summary judgment motions. Moultrie and Progressive both discuss at length whether Case, the Capital City Cycles' employee, was Moultrie's agent such that she could sign the UIM form rejecting coverage. A review of Case's affidavit demonstrates that she specifically states that she did not "electronically sign any documents on behalf of [Moultrie]." ECF No. 16, Ex. 1, Gayle Case Affidavit ¶ 8. Since Case testifies that she did not sign the UIM form, it is unnecessary for the court to undertake the agency relationship analysis.

Progressive also cites to Nationwide Mut. Ins. Co. v. Prioleau, 597 S.E.2d 165, 168 (S.C. Ct. App. 2004) for the proposition that the Progressive website is set up in such a way that without a signature there could be no issuance of a policy, and that if a policy

**B.     Meaningful Offer Presumption under <u>Wannamaker</u> test**

Even where an insurer is not entitled to the statutory presumption in § 37–77–350(B) that it made a meaningful offer, it may prove the sufficiency of its offer by showing that it complied with <u>State Farm Mut. Auto. Ins. Co. v. Wannamaker</u>, 354 S.E.2d 555 (S.C. 1987).  A meaningful offer requires that: "(1) the insurer's notification process must be commercially reasonable, whether oral or in writing; (2) the insurer must specify the limits of optional coverage and not merely offer additional coverage in general terms; (3) the insurer must intelligibly advise the insured of the nature of the optional coverage; and (4) the insured must be told that optional coverages are available for an additional premium."  <u>Id.</u> at 556.

Neither party has offered thorough briefing on the meaningful offer issue under the <u>Wannamaker</u> factors, instead choosing to utilize their allocated briefing on the statutory presumption issue.  The court reiterates the threshold rule for summary judgment that "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  <u>Celotex Corp.</u>, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(e)).  As this is before the court on cross-motions for summary judgment, both Progressive and

---

required a UIM form to be signed and the court accepted the plaintiff's argument that neither the insured nor the insured's agent signed the UIM form, then no policy would exist.  ECF No. 20 at 10.  However, the court in <u>Prioleau</u> held that where a wife made a claim under a policy that only the husband had signed, unless the court inferred an agency relationship "[the wife] is repudiating the very contract under which she seeks reformation."  <u>Id.</u>  However, here Moultrie argues that he did not sign the policy <u>at all</u>, not that an agent signed the policy on his behalf.  This makes <u>Prioleau</u> distinguishable.

Moultrie are the moving party.  As such, they each bear the initial burden to show the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.  They have both failed to do so.  Accordingly, the court denies summary judgment to both parties on the issue of whether the prepopulated electronic signature constitutes a "meaningful offer" under the <u>Wannamaker</u> test.

### IV.   CONCLUSION

For the reasons set forth above, the court denies both Moultrie's and

Progressive's motions for summary judgment.

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**October 18, 2017**
**Charleston, South Carolina**